UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

TRACEY COFFIN,

Plaintiff,

v. Case No: 2:26-cv-742-SPC-KRH

PUNTA GORDA HOUSING AUTHORITY; ROSSMAN REALTY PROPERTY MANAGEMENT; KURT PENTELECUC; and MARIANNE RAMIREZ,

Defendants.

---

**OPINION AND ORDER**

Before the Court are Defendants' motions to dismiss. (Doc. 23; Doc. 28; Doc. 36). Plaintiff opposes. (Doc. 26; Doc. 29; Doc. 38). Since Plaintiff lacks third-party standing, the Amended Complaint (Doc. 5) will be dismissed without prejudice.

**BACKGROUND**

This is a civil rights case alleging the termination of housing assistance payments without procedural due process. Plaintiff Tracey Coffin and her elderly mother—who is not a party in this lawsuit—lived together in Punta Gorda, Florida at a property managed by Rossman Realty Property

Management ("Rossman Realty"). (Doc. 5 at 10). Coffin's mother received assistance from the Housing and Urban Development-VA Supportive Housing program ("HUD-VASH") administered by the Punta Gorda Housing Authority ("PGHA"). (*Id.*) As part of the HUD-VASH program, PGHA sent partial rent payments to Rossman Realty. (*Id.*)

These payments, however, were terminated after Plaintiff and her elderly mother temporarily traveled out of town to attend a family medical emergency. (*Id.*) The PGHA never provided any written notice, explanation, or an opportunity for Plaintiff or her mother to be heard before terminating the financial assistance. (*Id.*) Once Rossman Realty learned the benefits were terminated, it imposed full market rent obligations. (*Id.* at 11). Rossman Realty initiated an eviction proceeding against Plaintiff because she was unable to make these payments. (*Id.*)

Later, Plaintiff and her mother met with Kurt Pentelecuc, Executive Director of PGHA. (*Id.*) Plaintiff disputed receiving any documents that supported PGHA's termination of benefits and Plaintiff's mother disputed signing other documents attributed to her. Ultimately, the meeting provided no substantive relief to either Plaintiff of her mother, who have now faced housing instability, emotional distress, and financial harm. (*Id.*)

## LEGAL STANDARD

Federal courts are courts of limited jurisdiction. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016). To open the federal courthouse doors, a variety of requirements must be met. One requirement is for the plaintiff to establish standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). While all plaintiffs must prove they have Article III standing, plaintiffs resting their claim on the "legal rights or interests of third parties" must also establish third-party standing. *See Kowalski v. Tesmer*, 543 U.S. 125, 129–30 (2004) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)); *see also Singleton v. Wulff*, 428 U.S. 106, 112 (1976) (plurality opinion) (explaining that Article III standing and third-party standing are distinct).

Once the plaintiff asserting rights of a third party establishes Article III standing, the plaintiff must then satisfy two hurdles. *See Kowalski*, 543 U.S. at 129–30. First, the party must have a "close" relationship with the person who possesses the right. *Id.* at 130 (citing *Powers v. Ohio*, 499 U.S. 400, 411 (1991)). Second, there must be some "hindrance" to the possessor's ability to protect their own interests. *Id.* Without overcoming either hurdle the plaintiff will lack standing and cannot access the courts. *See Sessions v. Morales-Santana*, 582 U.S. 47, 57 (2017).

## DISCUSSION

The Court need not consider Article III standing—though it is questionable—as the Court is convinced Plaintiff lacks third-party standing.[1] Indeed, PGHA and Pentelecuc only argue Plaintiff lacks third-party standing because she fails to allege that her elderly mother was unable to assert her rights or protect her own interests in the HUD-VASH voucher. (Doc. 28 at 6–8; Doc. 36 at 7–9). Plaintiff responds that she does, in fact, have standing because she was a member of the household receiving benefits and suffered independent damages (e.g., financial harm, loss of housing stability, and emotional stress). (Doc. 29 at 7–8; Doc. 38 at 5–7).

The Court finds that Plaintiff lacks third-party standing. While there exists some close relationship, Plaintiff fails to show why her elderly mother fails to assert a claim in her own right. It is unclear whether this is because her mother is disinterested or whether it stems from some disability that may justify third-party standing. *See Sessions*, 582 U.S. at 57. As such, Plaintiff has failed to show how she is the "obvious claimant," *Craig v. Boren*, 429 U.S. 190, 197 (1976), or the "best available proponent," *Singleton*, 428 U.S. at 116, of her mother's right to procedural due process.

Accordingly, it is

---

[1] The United States Magistrate Judge Douglas N. Frazier previously held Plaintiff lacked standing to bring her 42 U.S.C. § 1983 as alleged in the Original Complaint. (Doc. 4).

**ORDERED:**

(1) Defendant Rossman Realty Property Management's Motion to Dismiss (Doc. 23) is **DENIED AS MOOT.**

(2) Defendant Punta Gorda Housing Authority's Motion to Dismiss (Doc. 28) is **GRANTED IN PART AND DENIED AS MOOT IN PART.**

(3) Defendant Kurt Pentelecuc's Motion to Dismiss (Doc. 36) is **GRANTED IN PART AND DENIED AS MOOT IN PART.**

(4) The Clerk shall enter judgment that the Amended Complaint (Doc. 5) is **DISMISSED WITHOUT PREJUDICE** for lack of standing, terminate all pending deadlines, deny all pending motions as moot, and close the file.

**DONE AND ORDERED** in Fort Myers, Florida on September 16, 2026.

Sheri Polster Chappell

**SHERI POLSTER CHAPPELL**
**UNITED STATES DISTRICT JUDGE**

Copies: All Parties or Record